UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCO WILSON,<br><br>      Defendant. | Case No.: 22-CR-331 (BAH) |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through the United States Attorney for the District of Columbia and undersigned counsel, respectfully submits this opposition to Defendant's "Motion to Suppress Tangible Evidence" (ECF No. 18) (hereinafter "Def.'s Mot."). The defendant's motion claims that officers, "did not see Mr. Wilson with a marijuana cigarette" before stopping and eventually searching Defendant Wilson. Def.'s Mot. at 1. The defendant is forced to make this claim because if officers observed Mr. Wilson smoking marijuana on a public street in violation of D.C. law, they would indisputably have probable cause to arrest and search him. The defendant's argument is baseless and undermined not only by the expected testimony of numerous officers, but also by their actions on scene and body-worn camera footage showing Defendant Wilson with his hand to his mouth followed by a puff of smoke. The motion should be denied.

**FACTUAL BACKGROUND**

On Wednesday September 28, 2022, at approximately 5:33 p.m., Metropolitan Police Department (MPD) Officers with the 6th District were conducting focused patrol in the 3300 block of D Street, S.E. Officers observed an individual wearing a black hoodie and jeans, later identified as Marco Wilson, congregating with a group of individuals around a car parked outside of 3327 D

1

Street, S.E.  Officers observed Wilson smoking a rolled lit cigarette which had distinct, thick, white smoke.

Upon noticing the presence of marked MPD vehicles driving down the block, Wilson began to separate himself from the group of individuals he was with. The officers who had observed Wilson smoking knew that individuals in possession of illegal contraband frequently separate themselves from groups of individuals upon noticing the presence of the police.

Officers exited their vehicle to investigate the consumption of marijuana on public space, which is illegal in the District of Columbia.  As they exited the vehicle, they could smell an odor consistent with that of burnt marijuana.  The officers began walking towards Defendant Wilson, who left the public sidewalk and walked to the stairs at the entrance of 3327 D St., S.E.

Officer Epshane Porte stepped out of the rear driver side door.  As he did, his body-worn camera reflects that Defendant Wilson was walking away from the sidewalk towards the stairs of 3327 D Street SE, with his right arm tucked in and up, as if holding something to his mouth.



2

As Officer Porte approached the men assembled by the vehicle, his body-worn camera reflects that Defendant Wilson walked through the yard of 3327 D Street SE as visible puffs of smoke appear above his right shoulder.



Defendant Wilson then drew his right arm down and to his side, away from his mouth, as if discarding whatever he was holding.  A puff of smoke is still visible above his right shoulder.[1]



---

[1] The government is attaching a slowed down clip of the relevant portion of the Officer Porte's body-worn camera as Exhibit 1.

Officer Eddy Suarez-Medina was the first officer to follow Defendant Wilson into the yard. Even though four other men are standing in the same area, Officer Suarez-Medina walked directly to Defendant Wilson who is sitting on the front porch.



As Officer Suarez-Medina began to speak to Defendant Wilson, another of the men in the area began shouting, causing Officer Suarez-Medina to turn. Officer Suarez-Medina attempted to calm the man down, as Sergeant Jendy Olivo approached.[2] Based on his earlier observation of Defendant Wilson smoking what appeared to be marijuana, Sergeant Olivo pointed to Defendant Wilson, indicating for Officer Suarez-Medina to approach with him.

---

[2] The government is attaching the relevant portion of Sergeant Olivo's body-worn camera as Exhibit 2.



Sergeant Olivo walked towards Defendant Wilson and stated: "Sir, do me a favor and get up and come over here with us."  Wilson responded: "No, I cannot."  Sergeant Olivo instructed Wilson a second time to stand up.  Wilson asked Sergeant Olivo the reason, and Olivo stated: "You were smoking marijuana in a public space.  Do me a favor stand up."  Defendant Wilson responded: "I'm not standing up," and Sergeant Olivo placed his right arm on Defendant Wilson's right arm.  Officer Suarez-Medina assisted and grabbed Defendant Wilson by his other arm.  As the officers stood Defendant Wilson up to a standing position, Sergeant Jendy Olivo observed a clear plastic bag with a white rock-like substance protruding from Wilson's front sweatshirt pocket.  Sergeant Olivo immediately recognized this bag to contain illegal narcotics.



The officers then proceeded to pat Defendant Wilson down. As they did, Sergeant Olivo observed the black grip of a handgun in Wilson's waistband.





Officers photographed the firearm and removed it from Wilson's waistband. The recovered firearm was discovered to be a Taurus G3C 9 mm handgun. The firearm had one round in the chamber and twelve rounds in the magazine.

The officers secured Defendant Wilson in handcuffs and Sergeant Olivo immediately directed the other officers to find the marijuana cigarette that Defendant Wilson had discarded: "see if you can find the 'j' that he dropped." Sergeant Matthew Hiller began inspecting the area of the yard where Defendant Wilson—as reflected on Officer Porte's body-worn camera—discarded something. And Officer Conner Johnson also examined the yard to find the discarded cigarette. At one point, Sergeant Hiller pointed out to Officer Johnson the path Defendant Wilson took as he was smoking: the same path visible on Officer Porte's body-worn camera. As this was happening, one of the men who had been standing outside the yard became agitated, approached the officers, and began shouting and cursing at them, as he circled closely around them. To avoid further conflict, the officers decided to quickly photograph Defendant Wilson, and remove him from the yard.

During a search incident to arrest of Wilson, Officer Andrew Renneisen recovered an additional magazine containing twelve rounds of ammunition and two small round white pills from Wilson's right front pants pocket. The additional magazine also fit into the recovered firearm and contained an additional twelve rounds. Officer Renneisen recovered $2,103.00 of U.S. currency and a set of keys from Wilson's left front pants pocket. Additionally, Officer Renneisen recovered a black electronic scale with white residue from Wilson's front sweatshirt pocket.



The total amount of white rock-like substance recovered was 61.4 grams. The substance was sent for chemical analysis to the Drug Enforcement Agency. The substance was determined to be N, N-Dimethylpentylone, a Schedule I controlled substance.[3]

At the time of his arrest, Mr. Wilson had previously been convicted of crimes punishable by more than a year imprisonment in the following cases:

| Charge/Court | Disposition Date and Sentence |
|---|---|
| Possession with Intent to Distribute Cocaine/Transporting a Handgun – CT180924X – PG County | 4/5/2019 – 20 years/15 suspended |
| Assault with a Dangerous Weapon/Possession with Intent to Distribute PCP – 2007-CF3-25612 – DC Super Ct | 4/24/2008 – 92 months |
| Attempted Possession with Intent to Distribute Cocaine – 2005-FEL-1731 – DC Super Ct | 8/30/2006 – 20 months |

**ARGUMENT**

**I.    The Search of Defendant Wilson Was Permissible Incident to Arrest for Publicly Smoking Marijuana.**

There was probable cause to arrest Defendant Wilson, as soon as officers saw him smoking

---

[3] The Government anticipates proving at trial that this drug is commonly referred to as "Boot."

a rolled lit cigarette with distinct, thick, white smoke on a public sidewalk and smelled marijuana. 48 D.C. Code, Section 911.01 provides that "it is unlawful for any person to smoke or otherwise consume marijuana in or upon a public space, or in or upon any of the following places," such as a "street, alley, park, sidewalk, or parking area."  Anyone who violates this section "shall be punished by a fine of . . . or imprisoned for not more than 60 days."  Relatedly, D.C. Code, Section 581 specifies the situations under which an MPD officer may make a warrantless arrest.  With respect to misdemeanor offenses, such as smoking marijuana in public, an officer can arrest an individual if they have probable cause to believe an offense has been committed *and* the offense was committed in the officer's presence.  23 D.C. Code Section, 581(a)(1)(B).  Smoking marijuana in public is a misdemeanor offense.  Therefore, if these officers had probable cause to believe that Defendant Wilson was consuming marijuana in public and in their presence, they could arrest him.

      Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 243-44 (1983).  Nor is probable cause "a high bar," but "requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."  *Kaley v. United States*, 571 U.S. 320, 338 (2014) (internal quotations omitted). To determine whether an officer had probable cause for an arrest, "[courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U. S. 366, 371 (2003) (internal quotations omitted). Put simply, if these officers observed Defendant Wilson smoking marijuana on the sidewalk, they could arrest him. *See United States v. Lea*, 839 F. App'x 551, 553 (D.C. Cir. 2020) (finding that officers were entitled to search incident arrest an individual who informed them he was smoking "[s]ome weed" for violating D.C. Code § 48-911.01).  That's what happened here.

9

At least five sworn MPD officers (Sergeant Olivo, Sergeant Hiller, Officer Porte, Officer Suarez-Medina, and Officer Renneisen) observed Defendant Wilson smoking what they believed, based on their training and experience, to be marijuana on a public sidewalk. Officers will also testify that they could smell marijuana as they approached Defendant Wilson. Their observations are corroborated by their body-worn camera, particularly that of Officer Porte, which reflects Defendant Wilson apparently smoking something that is emitting visible puffs of smoke as he walks into the yard. Their observations are further corroborated by the actions they and Defendant Wilson took in the moments that followed. Defendant Wilson—the one individual in the group of men on the sidewalk who was engaged in illegal activity—immediately walked away from the group and towards the house. And despite the fact that there were multiple other men on the sidewalk, the officers pursued Defendant Wilson: the individual they observed smoking marijuana on the sidewalk. Sergeant Olivo pointed him out and—prior to making any physical contact with him—told Defendant Wilson the exact reason he singled him out: "You were smoking marijuana in a public space."

The officers' conduct in the moments that follow further substantiates their observations. Sergeant Olivo directs the other officers to try and find the discarded marijuana cigarette and Sergeant Miller appears to check the exact location where Defendant Wilson was smoking while walking. Given the size and nature of a marijuana cigarette—a smoldering combination of paper and dried plant material—and the amount of trash in the yard (see below) it is not shocking that these officers did not find it, particularly as they were trying to separate themselves from a volatile situation in the yard. *See United States v. Lea*, 839 F. App'x 551, 556 (D.C. Cir. 2020) (rejecting claim that officers could not find marijuana cigarette was incredible because "[r]easons for the cigarette's disappearance are not hard to conjure; for instance, . . . it could have blown away").

10



These types of observations have repeatedly been recognized as sufficient to support probable cause for arrest. *See, e.g. Bulter v. United States*, 102 A.2d 736, 741-72 (D.C. 2016) (officer had probable cause to arrest the defendant for unlawfully possessing marijuana where officer smelled "fresh" marijuana emanating from the vehicle the defendant occupied alone during a traffic stop); *United States v. Walters*, 361 Fed. Appx. 153, 154 (D.C. Cir. 2009) (holding that officers had probable cause to believe that the defendant unlawfully possessed marijuana upon finding marijuana and a lighter in appellant's jacket during a lawful traffic stop); *cf. United States v. Sheffield*, 832 F.3d 296, 305 (D.C. Cir. 2016) (the smell of marijuana, in conjunction with other evidence of drug use, provided probable cause to believe the vehicle contained drug contraband, which in turn supported a search of the car's compartments); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) (finding probable cause to search vehicle when there was the "smell of burnt marijuana emanating from the car, the pieces of torn cigar paper arrayed around [the defendant], and the ziplock bag of green weed material found on the floor behind his seat.").

Because these officers observed Defendant Wilson committing an offense in their presence, they had probable cause to arrest him, and search him incident to arrest. *See United States v. Bookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002) ("The validity of a search [incident to arrest] depends on the lawfulness of the arrest, which in turn requires probable cause to believe

11

that a crime has been committed.") (citing *United States v. Christian*, 187 F.3d 663, 667 (D.C. Cir. 1999)).

## II. In the Alternative, Officers Had Reasonable Articulable Suspicion to Frisk Defendant Wilson.

Even if the Court were to find that these officers did not have probable cause to arrest Defendant Wilson, and therefore search him, at the very least they had reasonable suspicion to justify a *Terry* stop. *See United States v. Terry*, 392 U.S. 1 (1968). Under *Terry*, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30).

In *United States v. Lea*, the D.C. Circuit found reasonable suspicion on markedly similar facts. 839 F. App'x at 554. There, officers smelled marijuana emanating from a defendant's vicinity and observed him "sitting alone smoking a hand-rolled cigarette." *Id.* The Circuit found that these observations "were sufficient to detain [the defendant] briefly in order to investigate a possible violation of D.C. Code § 48-911.01." *Id.* The same is true here. Officers observed Defendant Wilson smoking what appeared to be a marijuana cigarette. Specifically, they observed a rolled lit cigarette which had distinct, thick, white smoke and was emanating an odor consistent with burnt marijuana. Further supporting their suspicion of Defendant Wilson, upon seeing the officers, he immediately separated himself from the group of men and walked into a yard. These observations provided these officers with sufficient grounds to conduct a brief investigatory stop of Defendant Wilson. And even without patting down Defendant Wilson, the moment the officers stood him up, they observed narcotics, justifying his arrest and search.

## CONCLUSION

The officers' observations, supported by their actions and body-worn camera footage, provided probable cause to arrest or at least reasonable suspicion to stop Defendant Wilson. Upon the seizure of Defendant Wilson, narcotics are immediately visible in plain-view and the remainder of the evidence the government intends to introduce was seized from Defendant Wilson's person incident to a lawful arrest.

WHEREFORE, the United States respectfully submits that the defendant's "Motion to Suppress Tangible Evidence" (Docket Entry 16) be DENIED.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Cameron Tepfer*
CAMERON TEPFER
D.C. Bar No. 1660476
JOSHUA GOLD
Tx Bar No. 24103101
Assistant United States Attorneys
Federal Major Crimes Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 258-3515
Cameron.Tepfer@usdoj.gov