UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCO WILSON,<br><br>            Defendant. | Case No. 22-CR-00331 (BAH) |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

For the past twenty years, Mr. Wilson reports that he has only been employed for approximately three months. In the remaining time, based on his criminal history, he was either dealing drugs or in prison in relation to his dealing of drugs. In his most recent arrest, he was in possession of not just drugs, but a loaded firearm in his waistband. And this is not the first time he has been arrested for the possession of a loaded firearm. Supervision, lengthy periods of incarceration, and being previously shot by law enforcement has not deterred Mr. Wilson from continuing to deal drugs while armed. For the following reasons, the Government recommends a sentence of eighty-five months' imprisonment, followed by three years' supervised release.

### BACKGROUND

*The Offense*

On Wednesday September 28, 2022, at approximately 5:33 p.m., Metropolitan Police Department (MPD) Officers with the 6th District were conducting focused patrol in the 3300 block of D Street, SE, Washington, D.C. Officers legally attempted to stop Marco Wilson to investigate the consumption of marijuana on a public space, in violation of D.C. law.

Officers approached Mr. Wilson and asked him to stand. He refused. The officers then pulled Mr. Wilson up to stand, and as they did Sergeant Jendy Olivo observed a clear plastic bag with a white rock-like substance protruding from Wilson's front sweatshirt pocket, which Sergeant

Olivo instantly recognized as illegal narcotics.

Almost immediately thereafter, as Officers began to pat Mr. Wilson down, Sergeant Olivo observed the black grip of a handgun in Wilson's waistband. Officers then placed Mr. Wilson in handcuffs without incident.

Officers photographed the firearm and removed it from Mr. Wilson's waistband. The recovered firearm was discovered to be a Taurus G3C 9 mm handgun. The firearm had one round in the chamber and twelve rounds in the magazine.

During a search incident to arrest of Wilson, Officer Andrew Renneisen recovered an additional magazine containing twelve rounds of ammunition from Wilson's pants pocket. The additional magazine also fit into the recovered firearm. Officer Renneisen recovered $2,103.00 of U.S. currency. Additionally, Officer Renneisen recovered a black electronic scale with white residue from Wilson's front sweatshirt pocket.

Subsequent investigation revealed that the white rock-like substance was approximately 61 grams of N, N-Dimethylpentylone—a Schedule I substance known colloquially as "boot." As evidenced by the quantity of substance and U.S. currency, along with text messages from Wilson's cell phone, Wilson possessed the controlled substance with intent to distribute it and possessed the firearm, in part, in furtherance of drug distribution.

At the time of Wilson's arrest, he was aware that he was previously convicted of offenses punishable by more than one year incarceration. The firearm and ammunition in this case traveled in interstate commerce.

*<u>Procedural History</u>*

Mr. Wilson was indicted in relation to this offense on October 6, 2022.  On March 10, 2023, this matter was scheduled for trial.  On April 28, 2023, the Government filed notices pursuant

to Federal Rule of Evidence 404(b) and 609, and defense counsel filed a motion to suppress. A suppression hearing was held on May 23 and 24, 2023. After five of the six officers involved in arresting Mr. Wilson had testified, Mr. Wilson withdrew his motion to suppress. On June 1, 2023, Mr. Wilson pled guilty to violating 18 U.S.C. § 922(g)(1).

### *The Pre-Sentence Investigation Report*

The Pre-Sentence Investigation Report (PSIR) in this matter summarizes Mr. Wilson's personal and criminal history. Mr. Wilson is 37-years old and was born in Washington, D.C. PSIR at 2 and § 52. Mr. Wilson's mother died when he was young, and he was raised by his aunt. PSIR at § 54. He reported observing violence and experiencing violence as a child. PSIR at § 54. Mr. Wilson has one child and he reports that he is in regular contact with her. PSIR at § 57. Mr. Wilson attended school through the 6th grade and has not obtained his GED. PSIR § 71. Mr. Wilson was shot in 2007. PSIR at § 61. Mr. Wilson has a history of substance abuse, most recently taking painkillers up until his arrest. PSIR at §§ 66-68. Mr. Wilson has skill in laying concrete and worked for a summer for a concrete and construction company. PSIR at §§ 72 and 75.

Mr. Wilson has been convicted three times.

On March 24, 2005, MPD executed a search warrant at an apartment. PSIR at 9. Inside the apartment, officers found significant amounts of suspected narcotics and distribution paraphernalia, along with Mr. Wilson and another man. *Id.* On June 30, 2005, Mr. Wilson pled guilty to Attempted Possession with Intent to Distribute (Cocaine) and was sentenced to twenty months' incarceration, suspended as to all but six months. PSIR at 8-9. His probation in that case was revoked twice, and on each occasion, he received additional terms of imprisonment. *Id.*

On November 2, 2007, MPD identified a stolen vehicle and surrounded it. PSIR at 12.

Mr. Wilson was operating the vehicle. *Id.* Mr. Wilson drove the vehicle into an MPD officer, striking him and his cruiser. *Id.* Mr. Wilson was shot by officers as he fled. *Id.* Upon arrest, Mr. Wilson was in possession of a half-ounce bottle of suspected PCP. *Id.* On February 28, 2008, Mr. Wilson pled guilty to Assault with a Dangerous Weapon and Possession with Intent to Distribute a Controlled Substance. PSIR at 12. He was sentenced to seventy-two months' incarceration. *Id.* His probation was subsequently revoked. *Id.*

On June 6, 2018, Price George's County officers stopped Mr. Wilson for driving a vehicle with an inoperable headlight. PSIR at 13. As officers approached the vehicle, they smelled marijuana. *Id.* Inside the vehicle, officers found marijuana, cocaine base, digital scales, and a loaded semi-automatic firearm that was stolen. PSIR at 13-14. On February 21, 2019, Mr. Wilson pled guilty to Possession with Intent to Distribute and Transporting a Handgun. PSIR at 13. He was sentenced to twenty years' incarceration, with all but five suspended. PSIR at 13. Mr. Wilson was on supervision in this case at the time of the instant offense. *Id.*

In addition to his convictions, the PSIR reflects additional arrests that were not pursued including for Armed Robbery, Contempt, Possession with Intent to Distribute, and Unlawful Possession of a Firearm. PSIR at 15-16.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will

4

ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission . . .; and
> (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
> 
> (5) any pertinent policy statement –
> (A) issued by the Sentencing Commission . . . and
> (B) that, . . . is in effect on the date the defendant is sentenced.
> 
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> 
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing

5

judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Mr. Wilson's offense level to be 26 and his criminal history to be category V, yielding a Guidelines imprisonment range of 110 to 137 months. PSIR at 21. Additionally, the PSIR reflects a Guidelines range of one to three years of supervised release and a fine of $25,000 to $250,000. PSIR at §§ 88, 106. The Government agrees with these calculations.[1]

---

[1] The May 25, 2023 plea agreement came to a different Guidelines calculation based on an estimated criminal history category of IV rather than V. The Government believed, based upon its review of the original Pre-trial Services Report in this case, that Mr. Wilson's 2006 conviction

6

**THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The Government recommends that the Court sentence Mr. Wilson to eighty-five months of incarceration followed by three years of supervised release. This sentence reflects the serious nature of this offense, the repetitive and dangerous history of Mr. Wilson's other criminal offenses and provides adequate deterrence to others in the community given the danger presented by the carrying of loaded firearms in connection with drug trafficking.

**A. Nature and Circumstances of the Offense.**

Mr. Wilson pled guilty to carrying a loaded firearm while also in possession of distribution amounts of illegal narcotics and a digital scale.

While these offenses are possessory offenses, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *Blackson*, 2023 WL 1778194, at *7. This is particularly the case because the firearm recovered from Mr. Wilson's waistband was loaded and had a round chambered. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.") And Congress recently indicated how seriously these offenses should be taken when it increased maximum sentences for 18 U.S.C. 922(g) from ten

---

for Attempted PWID Cocaine had lapsed. That Report indicated that Mr. Wilson's probation was closed and revoked to incarceration on August 30, 2006, and that he was subsequently released from jail on September 27, 2006. The Final PSIR in this case reflects differently. Specifically, it reflects that Mr. Wilson was revoked on November 26, 2014, and sentenced to an additional thirty-six months' incarceration. Based on the Final PSIR, the Government believes that the Guidelines Range of 110 to 137 months' incarceration is accurate. Notwithstanding, the Government intends to honor the range that it estimated in the May 25, 2023 plea agreement.

years to fifteen years.

This Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g.*, *United States v. Carr*, 2022 WL 13947798 (D.D.C.), 4 (slip copy) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.")  Mr. Wilson carried this firearm to further his distribution of illegal narcotics.  This firearm was a threat—at the very least an implicit one—to others who might try to steal from or to those who might not want to pay for his wares.  Violence is inherent in drug trafficking.  And the carrying of firearms by people like Mr. Wilson assures that such violence will be deadly.

Further, arguments concerning "mere possession" ignore the current epidemic of gun violence in our community.[2]  A loaded firearm is a deadly weapon.  It has the ability with a single pull of the action to end a life. A firearm can escalate a mundane disagreement or a petty offense into a deadly encounter.  And the reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm

---

[2] *See, e.g.*, Peter Hermann, *Homicides are falling in many big cities.  In D.C., they're rising.*, Wash. Post (August 19, 2023, 9:00 a.m.), https://www.washingtonpost.com/dc-md-va/2023/08/19/dc-homicides-rising-major-cities/ ("But more than halfway through this year, killings in the District are surging toward numbers not seen in two decades . . . ."); Matt Gregory, *Tale of two cities: Homicides down in Baltimore, up in DC*, WUSA9 (December 28, 2023), https://www.wusa9.com/article/news/local/homicides-go-down-in-baltimore-less-than-300-dc-homicides-hit-20-year-high/65-14e1f98e-d82c-4878-a5c0-9ac461c47899 ("At the time this article was written DC Police had investigated 271 homicides so far this year, according to the Metropolitan Police Department (MPD.) This time last year the city was at 199.")

and pull the trigger, law enforcement is powerless to intervene.

In sum, this was a dangerous offense justifying a lengthy term of incarceration.

### B. The History and Characteristics of the Defendant.

This is not Mr. Wilson's first offense. He has a lengthy and consistent criminal history: Mr. Wilson deals drugs, oftentimes armed. Mr. Wilson is thirty-seven years old. And yet his only reported period of employment was from June to September 2022. His criminal history and conduct in this offense make clear what he was doing to support himself for all of those years: dealing drugs. This is evident from weeks of text messages recovered by the Government reflecting Mr. Wilson engaged in selling drugs.

Mr. Wilson's first arrest and conviction for dealing drugs was in 2005, nineteen years ago when he was nineteen years' old. Despite a term of incarceration and a lengthy period of supervision, Mr. Wilson only continued to deal drugs. He was arrested two years later following a chilling and violent encounter with law enforcement. There, when officers found Mr. Wilson in a stolen car, he attempted to flee, striking an officer with his vehicle. The officer fired upon Mr. Wilson who drove away. When Mr. Wilson was arrested, he had a gunshot wound and a half-ounce bottle of PCP. Mr. Wilson again received a term of incarceration and was placed on supervision. But this once again did not deter him. Nor did the fact that Mr. Wilson had been shot in the process of this violent crime. Despite being made aware that his distribution of drugs could lead to violence, including his own death, Mr. Wilson continued to distribute drugs. On June 6, 2018, while on supervision, he was stopped and found in possession of additional narcotics and a loaded firearm. Mr. Wilson yet again received a term of incarceration and supervision, but yet again this did not deter him. He was on supervision in that matter when he was arrested in possession of another firearm and distribution-level quantities of narcotics in this case.

Mr. Wilson's difficult childhood certainly merits some consideration. But he is not a child or even a young man anymore. Mr. Wilson is almost forty. And yet he continues to engage in the same behavior that has previously led to significant periods of incarceration and even to him being shot by police.

Mr. Wilson's history and characteristics justify a lengthy term of imprisonment.

### C. The Need for the Sentence Imposed.

The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Wilson for a significant period of time. It provides general deterrence: it will signal to the community that the possession of illegal firearms in connection with the trafficking of narcotics is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for Mr. Wilson to reflect on the serious and repetitive nature of his crimes.

Over the course of almost twenty years, Mr. Wilson has been dealing drugs, sometimes in the possession of firearms, and on one occasion harming a police officer. Despite knowing better than most that carrying firearms and dealing drugs can lead to violence—having been shot by police—Mr. Wilson continues to obtain illegal firearms and distribute drugs. Lengthy prison sentences, court supervision, the threat of rearrest have done nothing to deter him. He is now thirty-seven. He no longer has the excuse of youth or impulsiveness. The requested sentence of eighty-five months' incarceration is a reasonable one.

### **CONCLUSION**

For all of the foregoing reasons, the Government respectfully requests that this Court sentence Mr. Wilson to a term of imprisonment of eighty-five months followed by three years of

supervised release.

                                                 Respectfully submitted,
                                                 MATTHEW M. GRAVES
                                                 UNITED STATES ATTORNEY
                                                 D.C. Bar No. 481052

Dated: April 15, 2024           By:    */s/ Cameron A. Tepfer*
                                                 Cameron A. Tepfer
                                                 D.C. Bar No. 1660476
                                                 Assistant United States Attorney
                                                 United States Attorney's Office
                                                 for the District of Columbia
                                                 601 D Street NW
                                                 Washington, D.C. 20530
                                                 (202) 258-3515
                                                 Cameron.Tepfer@usdoj.gov